UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JOSE ENRIQUE BURGOS-VALDEZ,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 4:13-CV-04047-LLP<br><br>4:09-CR-40029-LLP-21<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

Movant Jose Enrique Burgos-Valdez ("Burgos-Valdez") has filed a motion to vacate, correct, or set-aside the 240-month sentence of imprisonment imposed on him.  See Civ. No. 13-4047, Docket No. 1 (hereinafter "Civ."). Respondent the United States of America ("government") moves the court to dismiss Mr. Burgos-Valdez's motion without holding an evidentiary hearing. This matter was referred to this magistrate judge for a recommended disposition by the October 16, 2014, standing order of the Honorable Karen E. Schreier, district judge.  The following is this court's recommendation.

**FACTS**

**A.    The Underlying Criminal Action**

Jose Enrique Burgos-Valdez was indicted in this court on March 11, 2009, and made his initial appearance on March 27, 2009.  See United States v. Burgos-Valdez, CR 4:09-CR-40029-LLP-21, Docket Nos. 1, 103 (hereinafter

"CR"). At his initial appearance, attorney Thomas J. Von Wald was appointed to represent Mr. Burgos-Valdez. Id. at Docket No. 106. A superseding indictment was filed on August 11, 2009; a second superseding indictment was filed September 9, 2009; a third superseding indictment was filed March 3, 2010; and a fourth superseding indictment was filed April 7, 2010. Id. at Docket Nos. 358, 443, 723, and 778. The final indictment against Mr. Burgos-Valdez charged him with conspiracy to distribute 500 grams or more of methamphetamine. Id. at Docket No. 778, Count 1.

The facts of the case, as recounted by the Eighth Circuit, are as follows. On July 12, 2007, New Mexico law enforcement stopped a vehicle in which Mr. Burgos-Valdez, codefendant Jorge Salgado, and one other person were traveling. See United States v. Diaz-Pellegaud, 666 F.3d 492, 497, 502 (8th Cir. 2012). The subsequent search of that vehicle yielded more than three kilograms of methamphetamine and a loaded .45 caliber handgun. Id. at 497. The three occupants of the vehicle were en route from Phoenix, Arizona, to Sioux Falls, South Dakota. Id. Evidence seized from the vehicle led to other searches, including two homes in Sioux Falls from which over one and one-half kilograms of methamphetamine, cash, and drug distribution paperwork were seized. Id. Evidence derived from the traffic stop also led law enforcement to intercept a drug shipment bound for Sioux Falls that contained another kilogram of methamphetamine and approximately 50 pounds of marijuana. Id.

Ultimately, 27 defendants were indicted by the government as part of this drug scheme. Id. Twenty-one of those defendants pleaded guilty, with the

majority of those defendants cooperating with the government.  Id.  Six of the codefendants, including Mr. Burgos-Valdez, opted to go to trial.  Id.  Mr. Burgos-Valdez was convicted of the single count of conspiracy asserted against him and sentenced to 240 months' imprisonment.  Id.

**B.   The Appeal**

Following his conviction and sentencing, Mr. Burgos-Valdez appealed. Id.  He challenged the sufficiency of the evidence against him at trial.  Id. at 498.  He also argued that his sentence was substantively unreasonable.  Id.

As to the first issue, the court noted that codefendant Jorge Salgado, a fellow occupant of the vehicle when it was subject to the traffic stop in New Mexico, pleaded guilty, cooperated with the government, and testified at trial. Id. at 502.  Salgado testified at trial that Mr. Burgos-Valdez had been the person who packed the methamphetamine into the vehicle in which they were caught and that he had been involved in acquiring those drugs prior to the planned trip to Sioux Falls.  Id.  The court held this testimony alone was sufficient to sustain Mr. Burgos-Valdez's conviction.  Id.

As to the second issue, Mr. Burgos-Valdez's argument on appeal was that his sentence was unreasonable compared to the sentence Jorge Salgado received.[1]  Id.  The Eighth Circuit affirmed Mr. Burgos-Valdez's sentence, noting the district court explained on the record that it found Salgado and

---

[1] Salgado received a sentence of 121 months' imprisonment for pleading guilty to conspiracy to distribute on October 9, 2009.  See United States v. Salgado, CR 09-40029-20, Docket No. 543.  His sentence was reduced on March 4, 2011, to 60 months' imprisonment pursuant to a government motion to reduce his sentence for substantial cooperation under FED. R. CRIM. P. 35(b).  See id. at Docket No. 1163.

3

Burgos-Valdez to be in dissimilar circumstances: Salgado pled guilty and Burgos-Valdez did not; Salgado was a minor participant in the conspiracy and Burgos-Valdez was not. Id. The Eighth Circuit affirmed Mr. Burgos-Valdez's conviction in all respects. Id. at 502-03.

C. **Mr. Burgos-Valdez's Motion to Vacate, Set Aside or Correct His Sentence**

On April 29, 2013, Mr. Burgos-Valdez filed a motion to vacate, set aside, or correct his sentence. See Civ. Docket No. 1. In support of his motion, Mr. Burgos-Valdez asserts two claims of ineffective assistance of counsel:

1. Counsel was ineffective in counseling Mr. Burgos-Valdez not to seek out a plea agreement, not to cooperate with the government, and to go to trial.

2. Counsel was ineffective because he had an actual conflict of interest.

Id.

The government moves to dismiss Mr. Burgos-Valdez's motion without holding an evidentiary hearing. See Civ. Docket Nos. 16, 17. The government argues that Mr. Burgos-Valdez procedurally defaulted the conflict of interest issue. Id. at Docket No. 17. As to the issue of failure of counsel to pursue a plea agreement on behalf of Mr. Burgos-Valdez, the government argues that Mr. Burgos-Valdez has not satisfied the Strickland standard because he has not shown prejudice. Id.

4

**DISCUSSION**

**A.      Scope and Procedure Applicable to a § 2255 Petition**

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners. Davis v. United States, 417 U.S. 333, 343-44 (1974). Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presented logistical issues because the record in the underlying criminal case was often in a distant location. United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court. Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension. Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255. Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255–relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an

5

omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749. Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here. See United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue). Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

6

B.  **Ineffective Assistance of Counsel**

   1.  **General Law Applicable to Ineffective Assistance Claims**

As discussed above, it was not necessary for Mr. Burgos-Valdez to have presented his ineffective assistance of counsel claims on direct appeal before raising them in his § 2255 motion. Lee, 374 F.3d at 654. Those claims are properly before the court and may be considered on the merits.

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction. Id. at 687. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment. Id. at 691. The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. In sum, a defendant must satisfy the following two-prong test. Id. at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must

7

> show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698.

### 2. Application of the Law to Mr. Burgos-Valdez's Claims

#### a. Failure to Tell Mr. Burgos-Valdez About the Government's Offer

Mr. Burgos-Valdez claims that his lawyer, Mr. Von Wald, never communicated to him the government's invitation to cooperate. Mr. Burgos-Valdez argues this constitutes ineffective assistance of counsel entitling him to vacate, correct or set aside his sentence.

Mr. Burgos-Valdez relies upon a pair of Supreme Court cases to support his claim of ineffective assistance: Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376 (2012); and Missouri v. Frye, ___ U.S. ___, 132 S. Ct. 1399 (2012). These two cases established the precedent that the Sixth Amendment right to counsel

8

applies at the "critical stage" of plea negotiations.  Frye, 132 S. Ct. at 1406-08.  In order to establish a claim of ineffective assistance at the plea negotiation stage where a plea offer was made but the defendant did not accept the offer, the defendant must satisfy Strickland's two-prong deficient-performance and prejudice test.  Id.

If a lawyer fails to communicate a plea offer altogether to his or her client, that constitutes deficient performance.  Id.  Showing the second prong, prejudice, requires a defendant to show three things:  (1) that there is a reasonable probability that he would have accepted the earlier plea offer if he had been afforded effective assistance of counsel in evaluating that offer; (2) that the defendant would have entered a plea before the government withdrew the offer or the district court refused to accept the plea; and (3) there is a reasonable probability that the end result of the criminal process would have been more favorable by reason of defendant's plea, either because the defendant's conviction would have been to a lesser charge or because the defendant's sentence would have been less.  Id. at 1409.  A defendant has no right to be offered a plea.  Id. at 1410 (citing Weatherford v. Bursey, 429 U.S. 545, 561 (1977)).

Here, the record contains an affidavit from Mr. Burgos-Valdez that his lawyer, Mr. Von Wald, failed to convey the government's offer to him.  See Civ. Docket Nos. 1, 2, 3.  Mr. Von Wald has supplied an affidavit stating that he did convey to Mr. Burgos-Valdez the government's invitation to give a proffer and Mr. Burgos-Valdez refused, maintaining his innocence.  See Civ. Docket No.

9

12.[2]  The court need not resolve these conflicting statements because even if Mr. Burgos-Valdez were able to satisfy the first prong of Strickland by showing deficient performance, he cannot satisfy the second prong by showing prejudice.  See United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (failure to show prejudice is dispositive and court need not also address whether counsel's performance was deficient).

     The Lafler and Frye cases are inapposite to Mr. Burgos-Valdez's facts.  In those cases, the prosecutors made actual plea offers to the defendants, complete with specific sentencing recommendations, which the defense lawyers either never conveyed to their clients, or recommended that the client reject the offer.  See Lafler, 132 S. Ct. at 1383; Frye, 132 S. Ct. at 1404.  Here, the government *never* made a plea offer.  Instead, the government invited Mr. Burgos-Valdez to make a proffer—to "debrief"--with the government:  to meet with the government and give a complete and truthful statement about Mr. Burgos-Valdez's knowledge of the drug conspiracy.  See Civ. Docket No. 2-1.  The government specifically stated when it extended this invitation that it was not promising to extend a plea offer, and that it was not obligated to make a plea offer to Mr. Burgos-Valdez after the debrief.  Id.  Instead, all the government promised is that it would evaluate Mr. Burgos-Valdez's information from the debrief and determine whether the government wished to extend a

---

[2] The court notes that Mr. Von Wald's version of events appears to be supported by documents that were created contemporaneously with the government's extension of its invitation to cooperate.  For example, on June 4, 2009, when Mr. Von Wald responded to the government's invitation to cooperate, he stated "At this time, my client is claiming no knowledge or involvement in this alleged conspiracy."  See Civ. Docket No. 2-2 at p.3.

plea offer at all to Mr. Burgos-Valdez.  Id.   Because no plea offer was ever made by the government, no sentencing recommendation was made by the government as part of a plea agreement.  Id.  This is fatal to Mr. Burgos-Valdez's attempt to prove prejudice.

As stated above, in order to show prejudice under these circumstances, Mr. Burgos-Valdez must show:  (1) that there is a reasonable probability that he would have accepted the earlier plea offer if he had been afforded effective assistance of counsel in evaluating that offer; (2) that he would have entered a plea before the government withdrew the offer or the district court refused to accept the plea; and (3) there is a reasonable probability that the end result of the criminal process would have been more favorable by reason of his plea, either because the his conviction would have been to a lesser charge or because his sentence would have been less.  Frye, 132 S. Ct. at 1409.  Here, Mr. Burgos-Valdez cannot show any of these three elements.  He cannot show that he would have accepted the plea offer because none was ever made.  He cannot show that he would have pleaded guilty before the government withdrew the agreement or the district court refused to accept the agreement because no agreement was ever extended.

Finally, and most speculatively, Mr. Burgos-Valdez cannot show that the sentence he actually received—240 months—was more than the sentence he would have received if he had accepted the plea agreement.  In order to go down this path of reasoning with Mr. Burgos-Valdez, the court would have to assume:  (1) that Mr. Burgos-Valdez would have debriefed; (2) that the

11

government would have found Mr. Burgos-Valdez's debrief valuable enough to warrant the extension of a plea offer to him; (3) that the government in fact would have extended a plea offer to Mr. Burgos-Valdez that included a sentencing recommendation; (4) that the government's sentencing recommendation in its plea offer would have been less than 240 months' imprisonment; (5) that Mr. Burgos-Valdez would have accepted that plea offer; (6) that Mr. Burgos-Valdez would have entered his plea of guilty before the government withdrew the offer and before the district court rejected the offer; and (7) that there is a reasonable probability that the sentence Mr. Burgos-Valdez actually received as a result of his plea pursuant to the plea agreement was less than the sentence he actually received after trial.  This line of reasoning represents far too many unsupported assumptions on far too many variables for the court to conclude Mr. Burgos-Valdez was prejudiced.[3]

A similar situation was presented in East v. United States, Case No. 11-3239-CV-S-RED, 2012 WL 3993450 at *1-2 (W.D. Mo. Sept. 11, 2012).  In that case, Robin East filed a § 2255 motion based on Frye and Lafler, arguing that her counsel was ineffective because she did not tell East about an offer of

---

[3] The government also argues that Mr. Burgos-Valdez's actual sentence received of 240 months' imprisonment would have been within the sentencing range he would have been subject to even if he had pleaded guilty to conspiracy to distribute and received credit for acceptance of responsibility. See Civ. Docket No. 17 at p. 14.  Thus, the government argues, Mr. Burgos-Valdez cannot demonstrate prejudice because he could have received the same sentence either way.  Id.  The court does not rule on this argument other than to note that often the reward for a defendant's cooperation is to allow him or her to plead guilty to an alternate charge, such as simple distribution or possession of drugs, that does not carry with it a mandatory minimum sentence.

cooperation made by the government.  Id.  The court held that Lafler and Frye were inapplicable to cooperation offers because cooperation offers were fundamentally different from formal plea offers.  Id.  Cooperation offers merely give a defendant "the chance to demonstrate that she has information or the ability to do something useful for the Government; however, an individual will not receive a cooperation plea agreement unless the information received from the defendant is actually useful to the Government and, then, even after the agreement has been made, the defendant must follow through with that agreement, i.e. by testifying, making recorded phone calls, etc."  Id.  Thus, on a § 2255 motion based on an underlying cooperation offer, there is no evidence to show whether the defendant would have had information useful to the government, whether the government would have extended a plea offer, and whether the defendant would have followed through with each step necessary to earn her lower sentence.  Id.

      Similarly, where a movant made a Frye/Lafler claim in a § 2255 proceeding, the district court held that the movant could not show prejudice because the plea offer made by the government did not contain a specific sentencing recommendation.  See Hartstein v. United States, Case No. 4:10-CV-2301 (CEJ) 2014 WL 1314896 at *2 (E.D. Mo. Mar. 28, 2014).  Thus, the defendant could not show Strickland prejudice because he could not show that the sentence he actually received was higher than the sentence he would have received if he had accepted the government's plea offer because that offer did not include a specific sentencing recommendation.  Id.

Like the petitioners in Hartstein and East, Mr. Burgos-Valdez cannot demonstrate prejudice. The government in his case never made a specific sentencing recommendation as part of a plea offer because it never made a plea offer. Therefore, Mr. Burgos-Valdez cannot show the sentence he received was probably higher than the sentence he would have received even assuming Mr. Von Wald did not tell him about the government's invitation to debrief. The court recommends denying this ground for habeas relief.

### b. Conflict of Interest

Next, Mr. Burgos-Valdez alleges he was denied his Sixth Amendment right to effective assistance of counsel because his lawyer had a conflict of interest. The Sixth Amendment right to counsel includes the "right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981). This is because "[t]he right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial." Bonin v. California, 494 U.S. 1039, 1044 (1990). When a habeas petitioner asserts a Sixth Amendment claim of ineffective assistance on the grounds of his lawyer's conflict of interest and the petitioner failed to raise the issue at trial or on direct appeal, he must demonstrate that an actual conflict of interest existed and that the conflict adversely affected the adequacy of his representation. Cuyler v. Sullivan, 446 U.S. 335, 348, 350 (1980). In such a case, prejudice is presumed. Id. at 348.

An actual conflict of interest occurs "when, during the course of the representation, the attorney's and the defendant's interest diverge with respect to a material factual or legal issue or to a course of action." United States v. Edelmann, 458 F.3d 791, 807 (8th Cir. 2006) (quoting United States v. Levy, 25 F.3d 146, 155 (2d Cir. 1994)). An actual conflict must have an effect on counsel's performance that is "actual and demonstrable, causing the attorney to choose to engage or not to engage in particular conduct." Noe v. United States, 601 F.3d 784, 790 (8th Cir. 2010). In order to show an actual conflict, Mr. Burgos-Valdez must "identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Id. (citing Winfield v. Roper, 460 F.3d 1026, 1019 (8th Cir. 2006) (quoting Covey v. United States, 377 F.3d 903, 908 (8th Cir. 2004))) (internal quotations omitted).

In Cuyler, the asserted conflict of interest arose because two lawyers undertook joint representation of three codefendants, each of whom were tried separately. Cuyler, 446 U.S. at 337-40. When the first of the three codefendants went to trial, one of the lawyers recommended not putting any defense witnesses on the stand as it would expose those witnesses for the other two trials that were to occur subsequently. Id. The first defendant to be tried was convicted, while the remaining two were acquitted. Id. The petitioner

15

argued that the lawyer's divided loyalties between the codefendants deprived him of effective assistance of counsel.  Id.

In Edelmann, the conflict arose when the defendant's attorney came under investigation for fraud by the same United States Attorney's Office that had indicted the defendant.  Edelmann, 458 F.3d at 801, 806.  The district court made inquiry and asked Edelmann if she was willing to waive the conflict of interest.  Id.  When Edelmann refused to waive, the district court discharged her attorney.  Id.  Edelmann argued that this deprived her of her right to select counsel of her choice.  Id.

In Noe v. United States, 601 F.3d 784, 787 (8th Cir. 2010), Noe alleged in a § 2255 motion that his attorney, Garcia, had an actual conflict of interest because a codefendant's family paid Garcia's attorney's fees, thus making Garcia reluctant to "point the finger" at the codefendant in defending Noe.  The court rejected this claim because Noe could not show that there was a viable alternative strategy that his counsel should have pursued.  Id.

Mr. Burgos-Valdez's claim in this case fails because he never identifies an actual conflict of interest.  His argument is tied directly to first ground asserted for ineffective assistance of counsel and is circular:  Mr. Von Wald should have told Mr. Burgos-Valdez about the government's invitation to debrief and should have urged Mr. Burgos-Valdez to work toward a plea agreement.  Having (incompetently, according to Burgos-Valdez) failed to so advise Mr. Burgos-Valdez, Mr. Von Wald had a "conflict of interest" because he

16

did not want to admit to Mr. Burgos-Valdez that he was incompetent and should have advised Mr. Burgos-Valdez to debrief.

Mr. Burgos-Valdez's first claim regarding the government invitation to debrief fails, as discussed above. He cannot now claim that counsel's deficient performance on that claim created a conflict of interest sufficient to create an independent violation of Mr. Burgos-Valdez's Sixth Amendment right to competent counsel. The court recommends denying relief on the grounds of a putative conflict of interest.

**C.     Procedural Default**

In responding to Mr. Burgos-Valdez's § 2255 motion, the government argues that Mr. Burgos-Valdez has procedurally defaulted on his conflict of interest claim and that the court should deny relief on that claim as being barred procedurally. See Civ. Docket No. 17 at pp. 4-6. The court rejects this argument.

As described above, claims of ineffective assistance of counsel are among the few claims a § 2255 movant can bring without having to first raise those issues in a direct appeal. See Lee, 374 F.3d at 654. It is clear from Mr. Burgos-Valdez's petition that he is alleging his conflict of interest claim as a Sixth Amendment, ineffective assistance of counsel claim. See Civ. Docket No. 1, 2, 3. Therefore, procedural default analysis does not apply.

Furthermore, the Cuyler standard for conflict of interest claims, as discussed above, assumes that the conflict of interest claim was not raised at the trial level or on direct appeal. See Cuyler, 446 U.S. at 348, 350 (where the issue

17

is raised the first time on habeas, petitioner must show an actual conflict of interest and that the conflict had an adverse effect on counsel's performance). Thus, as is clear from the Supreme Court's holding, it is entirely possible and even anticipated that a § 2255 movant may raise a conflict of interest issue for the first time in a collateral attack on his judgment. Id.

The government cites Jamison v. Lockhart, 975 F.2d 1377 (8th Cir. 1992), and Murray v. Carrier, 477 U.S. 478 (1986), for the proposition that procedural default analysis applies to Mr. Burgos-Valdez's claim of conflict of interest. See Civ. Docket No. 17 at pp. 4-5. However, both of these cases involve a habeas petitioner who was convicted under *state* law, and then sought habeas relief in federal court under 28 U.S.C. § 2254, not § 2255 as Mr. Burgos-Valdez does. See Murray, 477 U.S. at 482, 484; Jamison, 975 F.2d at 1378. Under § 2254, concerns of comity for the state judicial systems requires that a habeas petitioner seeking relief in federal court must show that he has presented his claims to the state court and allowed them a fair opportunity to resolve the issue first. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Clark v. Caspari, 274 F.3d 507, 510 (8th Cir. 2001); Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993). See 28 U.S.C. § 2254(b)(1)(A) (stating exhaustion in state court requirement). Claims under § 2255, like Mr. Burgos-Valdez's claim, take place entirely within the framework of the federal courts, so there are no comity concerns for another co-equal branch of government. That is why § 2255 does not generally require any type of exhaustion for claims of ineffective assistance of counsel.

The authority relied upon by the government for its procedural default analysis is inapposite. The court finds that Mr. Burgos-Valdez was not required to first raise his conflict of interest claim in state court, or on direct appeal, before raising it herein.

## CONCLUSION

Based on the foregoing facts, law and analysis, the court respectfully recommends that Mr. Burgos-Valdez's § 2255 motion to vacate, set aside, or correct his sentence [Docket No. 1] be denied in its entirety. The court further recommends that the government's motion to dismiss [Docket No. 16] be granted. The court further recommends that no certificate of appealability issue.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

DATED this 19th day of November, 2014.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge